UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                  )
KARREN KELLY MCCABE,              )
                                  )
                   Appellant,     )
                                  )
           v.                     )   CIVIL ACTION
                                  )   NO. 10-10764-WGY
JOSEPH BRAUNSTEIN,                )
                                  )
                   Appellee.      )
                                  )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    October 28, 2010

I.    **INTRODUCTION**

This is an appeal, brought under 28 U.S.C. § 158(a)(1), from a Memorandum of Decision and Order of the United States Bankruptcy Court for the District of Massachusetts concerning an adversary proceeding commenced by Joseph Braunstein (the "Trustee"), Chapter 7 Trustee of the estate of the McCabe Group, P.C. (the "McCabe Group"), against Karren Kelly McCabe ("Karren McCabe").

The adversary proceeding arose out of a stipulation of settlement (the "Stipulation") approved in the consolidated bankruptcy cases of the McCabe Group, TMG Holdings, LLC ("Holdings"), a subsidiary of the McCabe Group, and Edwin A. McCabe, Karren McCabe's spouse and principal of the McCabe Group, prior to their conversion to Chapter 7 from Chapter 11.  Pursuant

to the Stipulation, Investors Consolidated Insurance Company,
Manhattan Insurance Group, Inc., and Central United Life
Insurance Company (the "Insurance Companies") fully setoff an
amount owed to the McCabe Group for legal fees against a judgment
owed jointly and severally by Holdings, Edwin McCabe, and Karren
McCabe (the "Set-off").  The parties filed cross-motions for
summary judgment, and the bankruptcy court issued a Memorandum of
Decision and Order ruling in favor of the Trustee on his
equitable claims.  In her appeal, Karren McCabe argues, <u>inter
alia</u>, that the bankruptcy court lacked power to enter an
appealable final order.


**II.  BACKGROUND**

    A.  Procedural Posture

    On November 5, 2004, the jointly administered cases of Edwin
McCabe, the McCabe Group, and Holdings were voluntarily converted
to Chapter 7 and the Trustee was appointed Chapter 7 trustee of
each.  Memorandum of Decision at 14, <u>Braunstein v. McCabe</u>, No.
07-01191 (Bankr. D. Mass, Jan. 22, 2010), ECF No. 66 [hereinafter
Bankr. Mem.].  On May 10, 2007, the Trustee commenced the
adversary proceeding against Karren McCabe.  <u>Braunstein</u> v.
<u>McCabe</u>, No. 07-01191 (Bankr. D. Mass).  In Count I of the
Complaint, equitable subrogation, the Trustee asserts that the
McCabe Group succeeded to the rights of the Insurance Companies

2

in pursuing the debt owed by Karren McCabe by virtue of having satisfied the Note in the Set-off.  Compl. ¶ 49, <u>Braunstein</u>, No. 07-01191 (May 10, 2007), ECF No. 1.  The Trustee seeks the aid of equity by asserting that the McCabe Group surrendered a liquidated claim against the Insurance Companies and received no consideration – the entire benefit of the Set-off flowed to Karren McCabe and the estates of Holdings and Edwin McCabe.  <u>Id.</u> ¶¶ 49-51.  In Count II, relying on largely the same facts, the Trustee contends, in the alternative, that the Set-off unjustly enriched Karren McCabe to the detriment of the McCabe Group.  <u>Id.</u> ¶ 53.  Finally, in Count III, the Trustee seeks a declaration regarding the proper allocation of any funds recoverable from Karren McCabe between the McCabe Group and Edwin McCabe.  <u>Id.</u> ¶ 61.

On July 10, 2007, Karren McCabe filed a motion to dismiss the adversary proceeding, which the bankruptcy court denied, after argument, on August 15, 2007.  On October 15, 2009, Karren McCabe filed a motion for summary judgment.  On October 26, the Trustee filed a cross-motion for summary judgment.

On January 22, 2010, the bankruptcy court entered a Memorandum of Decison (the "Memorandum of Decision") and a seperate Order (the "Order") disposing of all of the issues raised in the case.  The bankruptcy court ruled that Karren McCabe was obligated to pay the estate of the McCabe Group

$142,355.50 either as part of the equitable subrogation or as the remedy for unjust enrichment.

On February 5, 2010, Karren McCabe filed a Notice of Appeal from the Order.  Initially, the Bankruptcy Appellate Panel determined that Karren McCabe had not contemporaneously elected to proceed with the appeal to the District Court, but following a Motion for Reconsideration, the panel transferred the appeal to this Court by order dated March 3, 2010.  On March 4, 2010, following an "epiphany," Karren McCabe decided to file before the bankruptcy court a motion to "Determine Core/Non-Core/Related Status Before Continuing on Appeal," Appellant's Br. at 9, ECF No. 8, which the bankruptcy court denied.  Karren McCabe did not file an  appeal from the bankruptcy court's April 5, 2010 Order.

B.   Appellate Jurisdiction

This Court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court.  28 U.S.C. § 158(a)(1).  Karren McCabe disputes whether the Order constituted a final order over which this Court has appellate jurisdiction and asks this Court to remand the case for a determination of core status.  "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995).  Upon referral from a district court, a bankruptcy judge has full statutory authority to "hear and determine . . . all core preceedings." 28 U.S.C. § 157(b)(1).

4

In a non-core proceeding, the bankruptcy court conducts the required proceedings and submits its proposed findings of fact and conclusions of law for consideration by the district court, which enters a final order or judgment after due consideration. 28 U.S.C. § 157(c)(1).  A bankruptcy court may only enter a final order or judgment if a proceeding is determined to be core (or if the matter is non-core, where the parties have consented to the entry of final orders by the bankruptcy court).  See 28 U.S.C. § 157(b)(1) & (c)(2).

Here, the bankruptcy court never explicity made a finding of core status.  Nonetheless, such a determination was implicit in the Order.  See In re Wolverine Radio Co., 930 F.2d 1132, 1144 n.17 (6th Cir. 1991) ("Although the bankruptcy court did not address which category of jurisdiction it was using, the fact that it issued an order indicates that it viewed the matter as a core proceeding.").  Similarly, in this case, the Memorandum of Decision reads, "I will enter an **order** granting the [Trustee's] Cross-Motion with respect to Counts I and II of the Complaint." Bankr. Mem. at 25 (emphasis added).  Thus the bankruptcy court must have determined that the proceeding was a core matter over which it was empowered to enter a "final . . . order[ ]."  28 U.S.C. § 157(b)(1).  Thereafter, the bankruptcy court issued the Order which granted the Trustee's summary judgment motion as to Counts I and II and Karren McCabe's summary judgment motion as to

5

Count III.  Order, Braunstein, No. 07-01191 (Jan. 22, 2010), ECF
No. 67.

     "[N]ormally the proper designation of a proceeding as either
core or non-core presents a pure question of law, subject to
plenary review on appeal."  In re Sheridan, 362 F.3d 96, 100 (1st
Cir. 2004).  As this Court has held that a determination of core
status was implicit in the Order, it denies Karren McCabe's
request for a remand for determination of core status, and
reviews the bankruptcy court's determination under a de novo
standard.

     "A core proceeding, unlike its non-core counterpart,
'relates to a function essential to the administration of the
bankruptcy case.'"  In re Haverhill Tech. Grp, 310 B.R. 478, 482
(Bankr. D. Mass. 2004) (quoting In re Sheridan, 362 F.3d at 107).
"If the proceeding, by its nature, arises only within the
bankruptcy context because it involves a right created by federal
bankruptcy law, then it is a core proceeding."  In re Scotland
Guard Servs., Inc., 179 B.R. 764, 766-67 (Bankr. D.P.R. 1993).
"Non-core proceedings are state or federal claims that arise
between parties within a bankruptcy proceeding . . . [which
could] 'survive outside bankruptcy, and in the absence of
bankruptcy, would have been initiated in a state or district
court....'"  Ralls v. Docktor Pet Centers, Inc., 177 B.R. 420,
424-25 (D. Mass. 1995) (Tauro, J.) (quoting In re MEC Steel

Bldgs., Inc., 136 B.R. 606, 609 (Bankr. D.P.R. 1992).

Nonetheless, the fact that a claim arises during bankruptcy

proceedings and involves issues of state, rather than federal,

law does not, by itself, determine that it is a non-core rather

than a core proceeding.  In re Arnold Print Works, Inc., 815 F.2d

165, 169 (1st Cir. 1987) ("It is the nature of the proceeding -

its relation to the basic function of the bankruptcy court - not

the state or federal basis for the claim, that makes the

difference....").

    Although the trustee raised two claims based largely on

identical sets of facts, the claims arose at different points in

time and under different circumstances.  "Unjust enrichment [is]

defined as the retention of money or property of another against

the fundamental principles of justice or equity and good

conscience."  Taylor Woodrow Blitman Constr. Corp. v. Southfield

Gardens Co., 534 F. Supp. 340, 347 (D. Mass. 1982) (Nelson, J.)

(internal quotation omitted).  To demonstrate unjust enrichment,

"a plaintiff must show '(1) an enrichment, (2) an impoverishment,

(3) a relation between the enrichment and the impoverishment, (4)

the absence of justification and (5) the absence of a remedy

provided by law.'"  Smith v. Jenkins, 626 F. Supp. 2d 155, 170

(D. Mass. 2009) (Stearns, J.) (quoting LaSalle Nat'l Bank v.

Perelman, 82 F. Supp. 2d 279, 294-95 (D. Del. 2000)).  Because

the enrichment and impoverishment occurred when the Stipulation

became effective, the unjust enrichment claim arose post-petition, and it arose because of the bankruptcy proceeding – numerous parties involved in the bankruptcy reached an agreement to set off claims.

As described more fully below, the subrogation claim arose when the claim for the underlying debt arose.  "Equitable subrogation occurs where one party, by virtue of its payment of another's obligation, steps into the shoes of the party who was owed the obligation for purposes of getting recompense for its payment."  In re N. Am. Rubber Thread Co., 333 B.R. 164, 168 (Bankr. D. Mass. 2005).  By stepping into the shoes of the subrogor, the subrogee is bound by the timing of the original claim, the date upon which it arose and the date upon which it expires under a statute of limitations.  See United States v. California, 507 U.S. 746, 756 (1993) (recognizing that if a subrogor's rights are barred, so too are a subrogee's rights because a subrogee "cannot acquire by subrogation what another whose rights he claims did not have." (internal quotation marks omitted)).  The equitable subrogation claim here is based on a claim to enforce a note against Holdings, Edwin McCabe, and Karren McCabe; this claim was ripe by at least April 2003 when a lawsuit was filed to enforce the note.  The claim to enforce the note arose entirely outside of the bankruptcy proceeding, and thus, it is a non-core proceeding.

8

The parties in this case did not consent to the final adjudication of non-core matters by the bankruptcy court. As a result, the Order, so far as it relates to the subrogation claim, cannot be considered a final order. In contrast, the portion of the order that pertains to the unjust enrichment claim can be considered a final order. Unfortunately, this split in the status of the claims places the case in a procedurally awkward position. The Court could split the adjudication of the claims, considering the appeal of the unjust enrichment claim currently before it and remanding the subrogation claim for findings of fact and conclusions of law. Such a course of action makes little sense from a judicial economy perspective, particularly because both claims largely depend on the same set of facts. See In re Spookyworld, Inc., 266 B.R. 1, 8 (Bankr. D. Mass. 2001) ("[S]erious questions of judicial economy and the risk of inconsistent determinations arise where a single fact pattern commingles both core and noncore disputes."). To prevent further delay in this proceeding, the Court will proceed as follows: The Court withdraws reference of the subrogation claim to the bankruptcy court. See 28 U.S.C. § 157(d); In re Red Carpet Corp. of Panama City Beach, 902 F.2d 883, 890-91 (11th Cir. 1990). As the court of original jurisdiction over the subrogation claim, this Court will rule on the parties' motions for summary judgment on that claim. The Court will also retain appellate jurisdiction over the unjust enrichment claim and rule on that appeal.

C.   Undisputed Factual Background

   1.   Preliminary Procedural Matters

Before the bankruptcy court, Karren McCabe argued that the statement of undisputed facts submitted by the Trustee ought be disregarded due to procedural defects.  Bankr. Mem. at 6-7. Specifically, she pointed out that in his affidavit in support of the Trustee's cross-motion for summary judgment on his equitable claims, Mark Corner did not certify that nine of the twelve exhibits were true and accurate copies.[1]  Id. at 7-8.  Agreeing with Karren McCabe in part, the bankruptcy court did not consider exhibits two, three, four, six, seven, eight, ten, eleven, and twelve of Mark Corner's affidavit.  Id. at 8-9.  The bankruptcy court concluded, however, that the Trustee's cross-motion remained adequately supported because exhibit nine, the Stipulation, was an operative document signed by Karren McCabe and helpfully contains fifteen paragraphs of factual recitals about the circumstances that gave rise to it.  Id. at 9; see Fed. R. Evid. 801(d)(2)(A).  Further, there was no doubt as to the Trustee's counsel's competency to testify as to the authenticity of the Stipulation because it was docketed and was retrieved from

_____

   [1] In the Appellant's Brief, ECF No. 8, Karren McCabe goes even further and argues that "there has been no affirmative showing of competency to testify as to the authenticity of any of the 12 documentary exhibits" and all of them ought therefore be disregarded.  Appellant's Brief at 25.  For the reasons provided by the bankruptcy court and affirmed by this Court, Karren McCabe's argument must be rejected with respect to exhibit nine, the Stipulation.

the Court's records.  Id. at 9 n.25; see Fed. R. Evid. 201.  This
Court affirms this evidentiary ruling by the bankruptcy court.

    2.   Facts

In deciding the the motion for summary judgment as to the
subrogation claim as the court of original jurisdiction, this
Court looks to the undisputed facts in the record.[2]  The McCabe
Group operated a law firm.  Edwin McCabe was the founder, sole
shareholder, president, and sole director of the McCabe Group.
Br. Appellee app. B, Stipulation ¶ B, ECF No. 10 [hereinafter
Stipulation].  From January 2000, through February 2003, Edwin
McCabe and the McCabe Group represented the Insurance Companies
in four related litigation and arbitration matters.  Id. ¶ E.  In
April 2003, the parties submitted a fee dispute arising from
these representations to binding arbitration, resulting in an
award to Edwin McCabe and the McCabe Group in the amount of
$142,355.50 plus interest and costs (the "Arbitration Award").
Id. ¶ F.

The McCabe Group held a ninety-nine per cent membership
interest in Holdings, while Edwin McCabe held the remaining one
per cent membership interest.  Id. ¶ C.  In 2001, Holdings
acquired a houseboat ("the Houseboat") with funds supplied by

---

    [2] The relevant facts are drawn from the Stipulation of
Settlement, which Karren McCabe signed through her attorney.
Stipulation at 5.  Because this Court and the bankruptcy court
drew facts from the same document, the factual findings do not
differ.

Edwin McCabe.  <u>Id.</u> ¶ D.  Edwin McCabe, in turn, obtained those
funds from David Harris ("Harris") pursuant to an unsecured
promissory note (the "Note") in the principal amount of $200,000.
<u>Id.</u>  Edwin McCabe, Karren McCabe, and Holdings all executed the
Note.  <u>Id.</u>  Holdings chartered the houseboat to the McCabe Group,
who then sub-chartered it to Edwin McCabe and the Karren McCabe
to occupy as their principal residence.  <u>Id.</u> ¶ C.  In April 2003,
Harris filed a lawsuit in the Southern District of Texas seeking
to enforce the Note against Holdings, Edwin McCabe, and Karren
McCabe, and was granted a default judgment in July 2003.  <u>Id.</u> ¶
I.  In August 2003, Harris assigned all rights, title, and
interest in the final judgment to be entered in that action to
the Insurance Companies.  <u>Id.</u>  In November 2003, the Insurance
Companies obtained a final judgment in the amount of $179,261.50
against Karren McCabe and Holdings (the "Houseboat Judgment").
<u>Id.</u>

     Edwin McCabe and the McCabe Group commenced their Chapter 11
cases on September 3, 2003, and Holdings commenced its Chapter 11
case on February 20, 2004.  <u>Id.</u> ¶ A.  Since Edwin McCabe filed
for bankrupty protection prior to the Houseboat Judgment, the
Insurance Companies' efforts to recover from him were
automatically stayed pursuant to 11 U.S.C. § 362.  The Insurance
Companies sought to setoff the Houseboat Judgment against the
Arbitration Award.  <u>Id.</u> ¶ 2.

12

On April 15, 2004, Edwin McCabe, the McCabe Group, Holdings, Karren McCabe, and the Insurance Companies entered into the Stipulation.  Under the terms of the Stipulation, the Houseboat Judgment would be deemed an allowed claim against Edwin McCabe and Holdings in their respective bankruptcy proceedings, and an undisputed claim against Karren McCabe, jointly and severally. Id.  Moreover, the Houseboat Judgment would be deemed fixed and liquidated in the amount of $179.261.50.  Id.  The Arbitration Award would also be deemed liquidated in the amount of $179.261.50 (despite the actual amount of the award being $142,355.50 plus interest and costs).  Id.  By assigning them the same value, the Arbitration Award fully set off the Houseboat Judgment such that each "shall be deemed settled and satisfied in full" and that the "the Insurance Companies shall have no further claim . . . against [Edwin] McCabe, [Karren] McCabe, Holdings or [the McCabe Group]." Id. ¶ 3.  Although Karren McCabe's personal obligation would be satisfied by the Set-off, the Stipulation does not mention that she provided any consideration to either the Insurance Companies or the McCabe Group.  See id.  In the absence of an objection, the bankruptcy court approved the Stipulation on May 14, 2004.  Bankr. Mem. at 14.

13

**III. SUBROGATION**

    A.   Standard of Review

    Summary judgment is proper where "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56(c)(2). An issue of fact is "genuine" if there exists a sufficient evidentiary basis on which the trier of fact could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it will affect the outcome of the case under the applicable law. Id. The moving party bears the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Save as to facts admitted by both parties, the court must disregard all evidence – even if unopposed – which the jury is free to reject, i.e., all evidence upon which a party bears the burden of proof. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000). Thus, summary judgment may be granted when a fair-minded jury could reach only one conclusion: in favor of the moving party.

B.   Analysis

In <u>East Boston Savings Bank</u> v. <u>Ogan</u>, 428 Mass. 327 (1998),

the Supreme Judicial Court of Massachusetts set forth five

factors necessary for equitable subrogation to apply:

> (1) the subrogee made the payment to protect his or her
> own interest; (2) the subrogee did not act as a
> volunteer; (3) the subrogee was not primarily liable for
> the debt paid; (4) the subrogee paid off the entire
> encumbrance; and (5) subrogation would not work any
> injustice to the rights of the junior lienholder.

<u>Id.</u> at 330 (quoting <u>Mort</u> v. <u>United States</u>, 86 F.3d 890, 894 (9th

Cir. 1996)).

Karren McCabe argues that a legal entitlement to payment

from two sources is a necessary element of equitable subrogation,

and it is absent from the present case because the Insurance

Companies were never entitled to recover on the Note from the

McCabe Group.  Mem. Supp. Mot. Def. Karren McCabe Summ. J. at 8,

<u>Braunstein</u>, No. 07-01191 (Oct. 15, 2009), ECF No. 38-1

[hereinafter Karren McCabe Mem.].  In support of her position,

Karren McCabe cites <u>Frost</u> v. <u>Porter Leasing Corp.</u>, 386 Mass. 425

(1982), in which the Supreme Judicial Court stated:

> Subrogation is an equitable adjustment of rights that
> operates when a creditor or victim of loss is **entitled to**
> **recover from two sources**, one of which bears a primary
> legal responsibility. If the secondary source (the
> subrogee) pays the obligation, it succeeds to the rights
> of the party it has paid (the creditor or loss victim,
> called the subrogor) against the third, primarily
> responsible party.  The doctrine of subrogation applies,
> within limits to be discussed shortly, to payments under
> policies of insurance. Upon payment, the insurer is
> entitled to share the benefit of any rights of recovery

15

> the insured may have against a tortfeasor for the same
> loss covered by the insurance.

Id. at 426-27 (emphasis added) (internal citations omitted).

The court in Frost merely was explaining the general concept of implied subrogation in an insurance context, rather than formulating a necessary element of the remedy. This reading is supported by the fact that such a factor was not referenced in the Ogan case, which postdated Frost by sixteen years. In fact, the third Ogan factor merely states that the subrogee shall not be the primary obligor, without further requiring it to be a secondary obligor. Further, declaring entitlement to recover from two sources a necessary element is at odds with the Supreme Judicial Court's characterization of equitable subrogation as a broad equitable remedy which "may apply even when one or more of [the five] factors is absent." Ogan, 428 Mass. at 330. Thus, application of the five Ogan factors is appropriate in this case, and the fact that the McCabe Group was not secondarily liable on the Note does not preclude equitable subrogation.

Looking to the five factors, there is no dispute that the first four factors are satisfied in this case. Karren McCabe argues that the fifth factor is not satisfied because the McCabe Group already had benefitted from the reduction of Holdings' debt as a 99% member and that recovery by the Trustee would result in an unwarranted windfall. Karren McCabe Mem. at 9-10. One of the

16

primary purposes of subrogation is to avoid unwarranted
windfalls.  Frost, 386 Mass. at 428.

Holdings was a joint and several obligor on the Note and a
defendant liable for the Houseboat Judgment in the amount of
$179,262.60.  Karren McCabe argues that as the owner of 99% of
Holdings, the McCabe Group benefitted from an increase in the
value of its interest in Holdings and to award the McCabe Group
any amount of damages would result in a windfall.  Karren McCabe
Mem. at 10.  Under normal circumstances this argument would be a
red herring because the McCabe Group and Holdings were two
seperate entities and a comingling of their interests would
require piercing the corporate veil.[3]  Under the current
circumstances, with Holdings in Chapter 7 bankruptcy proceedings,
such an argument could make sense because the McCabe Group
benefits from a reduction in Holdings' liabilities to the extent
that it increases Holdings' equity for disbursement to the
members of the limited liability company.  In evaluating the
argument, however, the Court must consider the position of the
parties at the time that the Stipulation became effective.

Holdings entered Chapter 11 bankruptcy proceedings on
February 20, 2004.  Stipulation ¶ A.  The parties signed the

---

[3] The members or managers of a limited liability company are
not personaly liable for the debts, obligations, or liabilities
of the limited liability company.  Mass. Gen. Laws ch. 156C, §
22.

Stipulation on April 15, 2004, _id._ ¶ 7, and the bankruptcy court approved it, such that it became effective, on May 14, 2004, Bankr. Mem. at 14.  Thereafter, Holdings voluntarily converted its bankruptcy to Chapter 7 on November 5, 2004.  _Id._ at 14. Because Holdings was not liquidating at the time that the Stipulation became effective, the McCabe Group did not benefit from the Set-off and  Karren McCabe has presented no facts to support a piercing of the corporate veil.  It is only with hindsight that Karren McCabe can argue that the McCabe Group derived a benefit.

Nonetheless, the McCabe Group cannot profit from the Set-off.  It can only receive recompense for its loss, anything more would constiue an "unwarranted windfall."  Accordingly, the McCabe Group is entitled to recover its net detriment, $142,355.50, the amount of the Arbitration Award forfeited in the Set-off.

## IV.  UNJUST ENRICHMENT

### A.   Standard of Review

On appeal from a decision of a bankruptcy court, this Court sits as an intermediate appellate court and addresses such actions "in the same manner as appeals in civil proceedings generally are taken to the courts of appeal from the district courts."  28 U.S.C. § 158(c)(2).  As a result, a federal district

court applies a "clearly erroneous" standard as to findings of
fact and a de novo standard with respect to conclusions of law.
In re LaRoche, 969 F.2d 1299, 1301 (1st Cir. 1992).

    B.   Analysis

    The bankrupty court ruled that Karren McCabe received an
enrichment from the Set-off and that the McCabe Group suffered a
detriment in the amount of the Arbitration Award.  Bankr. Mem. at
23.  The bankruptcy court held that Karren McCabe's enrichment
was unjustified as she "provided no consideration for the
substantial benefit she received."  Id. at 23-24.  As conclusions
of law, this Court reviews the bankrutpcy court's decision de
novo.

    In challenging this decision, Karren McCabe argues that the
McCabe Group did not suffer a detriment and that equitable relief
for unjust enrichment was not available to the McCabe Group
because it had an adequate remedy at law.  Appellant's Br. at 19-
20.  Karren McCabe's argument regarding the lack of detriment is
that the McCabe Group did not suffer a loss because the value of
its investment in Holdings increased through the Set-off.  As
explained above, such an argument does not make sense because the
McCabe Group and Holdings were two separate entities at the time
of the Set-off and there is no justification for piercing the
corporate veil between them.

    Karren McCabe is correct that Massachusetts courts have
repeatedly held that when there is an adequate remedy at law,

there can be no remedy for unjust enrichment.  <u>See, e.g.</u>,
<u>Santagate</u> v. <u>Tower</u>, 64 Mass. App. Ct. 324, 329 (2005).  Karren
McCabe argues that the Trustee had an adequate remedy at law
which he "has squandered by virtue of his failure to seek relief,
per FRBP 9024, FRCP 60 or an independent action to relieve him
from a judgment, from the judgment represented by the order
approving the stipulation."  Appellant's Br. at 19-20.  Karren
McCabe does not, however, support her argument with caselaw
concluding that a motion or claim under Federal Rule of
Bankruptcy Procedure 9024 or Federal Rule of Civil Procedure 60
are legal remedies.  In fact, some courts have held that in order
to raise a claim under Federal Rule of Civil Procedure 60(d), one
element is the "absence of any adequate remedy at law," <u>see,
e.g.</u>, <u>Superior Seafoods, Inc.</u> v. <u>Tyson Foods, Inc.</u>, No. 09-2031,
2010 WL 3447753, at *4 (8th Cir. Sept. 3, 2010), suggesting that
a claim under Federal Rule of Civil Procedure 60 is not actually
a legal remedy.  <u>But see</u> <u>Campaniello Imports, Ltd.</u> v. <u>Saporiti
Italia S.p.A.</u>, 117 F.3d 655, 663 (2d Cir. 1997) (holding that
Federal Rule of Civil Procedure 60(b)(3) offers an adequate
remedy at law precluding equitable relief).

Regardless whether Federal Rule of Bankruptcy Procedure 9024
or Federal Rule of Civil Procedure 60 are remedies at law,
success under either rule would not affect the McCabe Group's
rights as to Karren McCabe.  At best, if the Trustee succeeded in

relieving the McCabe Group from the Stipulation, the McCabe Group would have a legal claim against the Insurance Companies, not against Karren McCabe.  Again, Karren McCabe provided no caselaw supporting the legal proposition that an equitable claim against one party is unavailable if an adequate legal remedy exists against another party.  Likewise, this Court has found no caselaw to support such a contention.  This Court holds that the Trustee could proceed with an unjust enrichment claim against Karren McCabe because it had no adequate legal remedy against her.  Accordingly, this Court affirms the bankruptcy court's ruling that the Trustee has no adequate remedy at law.

Applying the elements of the unjust enrichment remedy to the facts, this Court agrees with the bankruptcy court's ruling that Karren McCabe benefitted in the amount of $179,262.60 from the satisfaction of her personal obligation on the Houseboat Judgment by the McCabe Group.  Bankr. Mem. at 23.  The McCabe Group had no liability with respect to the Judgment, but nevertheless surrendered the $142,355.50 Arbitration Award to extinguish the obligation.  Id.  Karren McCabe's enrichment is unjustified because she provided no consideration for the benefit she received.  Thus, the McCabe Group is entitled to payment in the amount it surrendered - $142,355.50.

## V.   CONCLUSION

This Court AFFIRMS the bankruptcy court's determination that the unjust enrichment claim is a core matter and REVERSES the

21

determination that the equitable subrogation claim is a core matter.

Considering the equitable subrogation claim as a court of original jurisdiction, the Court DENIES Karren McCabe's motion for summary judgment and ALLOWS the Trustee's motion for summary judgment, awarding the Trustee the $142,355.50.

Performing its role as an intermediate appellate court, the Court AFFIRMS the bankruptcy court's ruling on the unjust enrichment claim.  The Trustee is entitled to recover $142,355.50 from Karren McCabe, as an alternative theory to equitable subrogation.

**SO ORDERED.**

/s/ William G. Young
_____
**WILLIAM G. YOUNG**
**DISTRICT JUDGE**